BENJAMIN LEE *vs.* ADMINISTRATORS OF BOTELER AND BELT.
*June,* 1842.

Where there is a senior and a junior mortgage, by the same mortgagor, of the same land, to different parties, and both file a bill, and obtain a decree for a sale, but the sale in fact took place under the proceedings upon the senior mortgage, there is no objection to the junior mortgagee claiming payment of his debt out of the surplus, after the discharge of the elder mortgage debt.

It is in many instances perfectly consistent to pursue two different remedies, when either may avail, taking care only to obtain the fruits of one.

Where an audit is confirmed by a court of equity, the approved practice is also to pass an order to pay the claims which were thereby allowed; but the judgment of the court is effectually pronounced on a claim by confirming the auditor's report, if no steps are taken to revoke or overrule it.

APPEAL from the Court of Chancery.

The bill in this case was filed on the 6th April, 1835, by the appellant, and alleged, that in a suit in equity in *Prince George's* county court, between *Lucy S. Brooke,* complainant, and *Walter B. Brooke,* defendant, such proceedings were had that on the 27th July, 1830, a decree was passed for the sale of certain mortgaged premises; that *E. M. D.* was appointed trustee to make said sale; gave a bond with *A. H. B.* and *E. W. B.* as his securities, which was approved and filed in the said cause; that *E. M. D.* made and reported a sale, which was ratified by the court; that anterior to the time of the execution of the said mortgage, sundry judgments were obtained against *W. B. B.,* and that after the execution of the said mortgage, on the 15th June, 1829, he executed another mortgage of same lands to the appellant, to secure a sum due him; that the proceeds of the mortgaged premises having been more than sufficient to pay off the first mortgage debt, and judgments before that mortgage, other creditors, and among the rest the appellant, were permitted to come in and be made parties to the proceedings in said suit; and thereupon orders were passed by said court, sitting as a court of equity, whereby it was referred to the auditor of said court to state an account, who made a report and account, showing the sum due the appellant $ ; that said *E. M. D.* was removed from his trustee-

ship, and *A. M.* was appointed in his place, but previously the said *E. M. D.* had received considerable sums of money, and the money in his hands was charged with the payment of the claim of your orator, as will be seen by reference to the report and statements aforesaid; and a further report having been made by the auditor of the said court, showing that the money in the hands of the said *E. M. D.*, as trustee, was sufficient to pay (in addition to other liens of an elder date,) the claim of the appellant, the said county court did, on the 17th April, 1834, ratify and confirm the said report; that the proceedings of the said cause in the year 1834 were duly transmitted to the High Court of Chancery, to which reference is craved; that *E. M. D.* died intestate and insolvent; and that no letters of administration have been granted on his estate; that his successor in the trust *A. M.* is also dead; that appellant could not obtain from said *E. M. D.*, in his lifetime, payment of his said claim, and that since his death he has demanded payment of his sureties *A. H. B.* and *E. W. B.*, who refused to pay the same; that the said sureties are answerable on their bond for the same; that appellant could have recovered on such bond, but after diligent search made for said original bond it cannot be found, having been, as it is believed, fraudulently taken out of the office of the clerk of *P. G.* county court and destroyed, by reason of which your orator would be unable to produce the same, if the execution thereof was denied, and the same not having been recorded, the appellant is unable to obtain an authenticated copy of the same, upon which to proceed at law: by reason whereof the appellant is without remedy, except by the interposition of this court, in which a person having a claim upon a bond which has been lost, can obtain a relief in the same manner as he can obtain it at law upon the bond, if in existence and in his possession. Prayer for general and special relief.

The audit filed with the bill shewed an account between the mortgaged estate of *Walter B. Brooke* with *E. M. Dorsey*, the former trustee, and allowed the appellant on his mortgage dated 15th June, 1829, $1,338.26, out of the proceeds of the sales, which amounted to $11,500.

The defendants, the securities, *A. H. B.* and *E. W. B.*, who are since dead, answered the bill, and put the appellant to the proof of his case, and also denied the jurisdiction of the court. Proof was taken to establish the facts of the bill; and that the appellant had filed a bill on the equity side of *P. G.* county court, against *W. B. B.*, on his mortgage of the 13th June, 1829, and obtained a decree for a sale. The Chancellor (BLAND,) dismissed the bill *pro forma*, and by consent of parties. The complainant below appealed.

The appeal was argued before BUCHANAN, C. J., STEPHEN, DORSEY and CHAMBERS, J.

By PRATT and A. C. MAGRUDER, for the appellant, who contended—

1. The proceedings in the case of *Lucy Brooke* against *W. B. Brooke*, established the claim of the plaintiff in error, and his right to be paid the amount thereof, out of the assets in the hands of the trustee—refer to the order of the court directing the claim to be audited, the auditor's report in favor of this among other claims, and the order ratifying the report.

2. The execution of the bond by the original defendants, as securities for the trustee, is admitted—they do not know the words of the condition of the bond. The loss of that bond is not denied, on the contrary, they admit they have been informed of its loss, and they do not pretend in any later stage of the case to show that by any possibility it can be found. Of the loss of the bond, independently of this, there is sufficient evidence, which has already been referred to.

3. Evidence sufficient that the bond executed by the defendants did make them answerable for the faithful conduct of their principal as trustee, and to every claimant against the fund which was allowed by the court. See court's opinion in *Boteler and Belt vs. State, use of Contee and Bowie,* 5 *Gill & Johns.* 520.

4. There is nothing in the defence that the remedy of the plaintiff in error was at law, and that he might have obtained and brought suit on an authenticated copy of the bond. The loss

of the original gave the plaintiff in error a right to go into equity, even if he himself had obtained an authenticated copy of the bond itself before it was lost. The authenticated copy spoken of in the answer, must mean an authenticated copy of an authenticated copy belonging to some one else, probably the plaintiff in the suit referred to in the third point.

5. There is as little ground of defence furnished by the proceedings to which reference is given, the suits in equity by plaintiff in error against *Walter B. Brooke,* the original mortgagee, and the other against *Otho B. Beall,* the purchaser at the sale by *Dorsey.* The mortgage by *W. B. Brooke* to plaintiff in error was younger than that of *Lucy Brooke.* It was a mortgage of the equity of redemption. The trustee sold the whole estate, thereby bringing into court, under the original decree, not only the original debt due to *Lucy Brooke,* but the proceeds of sale of the equity of redemption. The court had a right and was bound to apply the sum in its custody, and which represented the equity of redemption, to pay off the mortgage of the equity of redemption, and thereby give to the purchaser the estate which he bought and paid for, the absolute fee simple and not merely the interest of *Lucy Brooke.*

6. If it be insisted, (as from the answer it may be inferred it will be,) that before proceeding by bill against the securities, an order of the court requiring them to pay the money ought to have been obtained, an answer to that point, it is supposed, will be found in *Boteler and Brooke vs. John Brooke,* 7 *Gill and Johns.* 143.

By J. Johnson and T. F. Bowie for the appellees.

In support of the Chancellor's decree, it will be insisted—

1. That there is no evidence, that *Dorsey,* the trustee, for whom it is alleged the intestates of the appellees became bound as sureties, ever did receive any money applicable to the payment of the claim of the complainant.

2. That the remedy of the complainant, if he has any, is at law by a suit on the bond, or on a certified copy of it, the evidence being abundant to show, that such copies were in

existence at the time the bill was filed, and in the power of the complainant to procure.

3. That the complainant has no remedy against the sureties in *Dorsey's* bond, either at law or in equity. 1st, because he adopted different and independent proceedings for the recovery of his claim. 2nd, because no order was ever passed by the court for the payment of the claim by *Dorsey;* and 3rd, because even if there be any order among the proceeding, which can be understood as authorising or requiring the payment of the money by *Dorsey,* no demand of such payment ever was made upon him.

4. There is no sufficient evidence of the loss of the bond.

CHAMBERS, J., delivered the opinion of the court.

The claim upon which this suit is founded, like that in the preceding case, against the same appellees by *John Brooks,* was originally due from *Walter B. Brooke,* and was filed in the case of *Lucy S. Brooke* against him.

With the exception of a very few and unimportant particulars, it is subject to the same considerations, and must be decided by the same principles.

Besides the defences common to the two cases, the appellees have in this case urged—

1st. That the appellant has resorted to a different mode of proceeding, and

2ndly. That no order for the payment of the claim was ever passed in the cause of *Lucy S. Brooke vs. W. B. Brooke.*

The appellant's claim arises on a mortgage executed to him by *W. B. Brooke,* junior in date to the mortgage to *Lucy S. Brooke,* and for the same land. Pending the proceeding, and, as it would seem, before the decree in the case of *Lucy S. Brooke,* the appellant filed a bill to July term of *Prince George's* county court against *W. B. Brooke,* to sell the mortgaged property, and obtained a decree at the same term, *it is said*—for amongst other evidences on this record, of a want of proper and usual attention to the preparation and arrangement of the proceedings, it is quite a curious as it certainly is a novel fact, that the decree is neither signed by one of the judges of the

court, nor has it any date upon its face by which to determine when it passed.

The decree in the suit by *Lucy S. Brooke*, on the elder mortgage, was obtained on the 27th July, in the same year, appointing a different trustee, who doubtless proceeded promptly to execute it, as the sale by him was actually made on the 9th September, following.

It is, then, perfectly manifest, that the appellant did not derive any benefit from the proceeding instituted by him, and it would be as much at variance with the plain demands of justice and equity, as it is against the principles of the law, and the decisions of this court, to make the fruitless attempt to obtain relief by one process, a bar to the pursuit of another. It is in many instances perfectly consistent to pursue two different remedies, when either may avail, taking care only to obtain the fruits of one—much more allowable is it to resort to a second remedy, when, by a circumstance not arising out of any act or omission of the party prosecuting, the first remedy attempted becomes unavailing. Nor do we think the second objection noticed well founded.

It certainly would have been more in conformity to the approved practice, to have accompanied the order of confirmation with an order to pay the claims which were thereby allowed.

It may be, that the peculiar circumstances of the case created some difficulty in respect to the proper person by whom the payment should be made. The decree required the trustee to sell for cash, and bring the proceeds into court.

Another decree or order had dismissed the first trustee and appointed a second—each of the trustees had acknowledged the receipt of a part of the proceeds of sale—various orders had been passed directing the application of the funds in the hands of the trustees, and so much difficulty and confusion was produced by the failure of the first trustee to account for the proceeds of sale, as his duty required, that it is now made a grave question in the argument of this cause, whether the funds received by the first trustee were applicable to the pay-

ment of appellant's claim. That question has been disposed of in the opinions expressed in the previous case, and it is now therefore made to appear, that the order would have been rightfully made upon *E. M. Dorsey,* the first trustee. But we cannot agree, that the failure so to make it, affected the validity of the claim.

The judgment of the Chancery Court is effectually pronounced on a claim by confirming the auditor's report, and if no steps are taken to revoke or overrule such judgment, it is as conclusive as if it had been accompanied with an order on the trustee to pay the amount. After such adjudication upon the the rights of the party, an order to pay, would at any time be passed as a matter of course.

The court, for the reasons assigned in the previous case, do not regard the other grounds of objection sufficient to defeat the appellant's right to recover, and will therefore sign a decree which shall, pursuant to the agreement in this cause, remand the case to the Chancery Court, that an account may be taken of the assets of the original defendants, and such other proceedings be had as may be necessary to give to the appellant the relief to which he is entitled.

DECREE REVERSED WITH COSTS, AND CAUSE REMANDED.